**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gratian Antoniu Dragomir, | No. CV-24-03729-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Nationwide Mutual Insurance Company, et al., | |
| Defendants. | |

On August 26, 2025, Defendants Nationwide Mutual Insurance Company and NCS Arizona LLC (collectively, "Defendants") filed a Motion to Dismiss Plaintiff's Claim VII, defamation per se (Doc. 75). *Pro se* Plaintiff Gratian Antoniu Dragomir ("Plaintiff") filed a Response in Opposition (Doc. 84) as well as a Motion to Amend the Third Amended Complaint. (Doc. 83). Defendants addressed both Plaintiff's Response and Motion to Amend in their Reply. (Doc. 86).

The Court will first address Defendants' Motion to Dismiss followed by Plaintiff's Motion to Amend. Additionally, the Court will rule on Plaintiff's Motion to Disqualify Judge, which has been fully briefed (*see* Docs. 109, 113, 116) as well as Plaintiff's Motion to Subpoena Witnesses for Depositions (Doc. 119). At the outset, the Court notes that Plaintiff has filed a subsequent case against Defendants (*see* Case No. 25-cv-4148), and there are now several pending motions in that case, including a Motion to Dismiss the First Amended Complaint in that case. The Court will consider those motions in a separate Order.

For the reasons set out below, the Court denies Defendants' Motion to Dismiss, Plaintiff's Motion to Amend, Plaintiff's Motion to Disqualify, and Plaintiff's Motion to Subpoena. The Court will additionally lift the stay that was previously placed on this case (*see* Doc. 124) and has determined that all further pretrial matters in this case will be referred to a Magistrate Judge. The Magistrate Judge will rule on the parties' outstanding Joint Discovery Dispute (Doc. 122) that is not resolved by this Order.

**I.      Motion to Dismiss**

Plaintiff was previously employed by Defendants as a security officer, and this case arises generally from alleged misconduct during his employment. (Doc. 65 at ¶ 7). While Plaintiff's Third Amended Complaint ("TAC") provides details into the alleged discrimination and harassment that he experienced, for brevity's sake, this background section will focus solely on the allegations underpinning Plaintiff's defamation per se claim.

**A.      Background**

In filing his TAC, Plaintiff alleges that newly found evidence revealed that Defendants made "statements falsely accusing [Plaintiff] of criminal conduct" and "falsely alleged that [Plaintiff] possessed recordings of coworkers engaging in sexual activity, leading to fabricated claims of voyeurism under ARS § 13-1424." (*Id.* at ¶ 41). Plaintiff alleges that his co-workers, Brittany Collins and Antonio Arellano, made these claims, and his "direct leader," Rob Lanning, escalated them into a complaint, resulting in an investigation by Defendants' human resources department, the Office of Associate Relations ("OAR"). (*Id.* at ¶ 2, 7, 42). Specifically, Plaintiff alleges:

- On "February 20, 2024 (1:49 AM) – Lanning, despite knowing that the text and photos at issue were sent on January 19, 2024, submits an 'urgent ' [sic] complaint to OAR and his direct leader, Larry Zahn, falsely alleging that Plaintiff engaged in felony stalking, harassment, and created a hostile work environment, all while conspicuously omitting any mention of recordings," (*id.* at ¶ 50);

- On "February 20, 2024 (8:00 AM) – Less than seven hours later, Lanning abruptly informs OAR that Plaintiff 'Gratian allegedly said he has 'recordings' of Antonio and Brittany having sex,' falsely implicating Plaintiff in a violation of ARS § 13-1424 (Voyeurism)," (*id.* at ¶ 51); and

- On "February 21, 2024 (at 7:39 PM) – Following after Lanning, Arellano sends a formal complaint via email to Lanning, reinforcing false allegations against the Plaintiff," (*id.* at ¶ 52).

Based on the foregoing statements, Plaintiff claims that he has been accused of conduct that violates the following criminal statutes "ARS § 13-2923 (Stalking)," "ARS § 13-2921 (Harassment)," "ARS § 13-1424 (Voyeurism)," "ARS § 13-2904 (Disorderly Conduct)," and "ARS § 12-1810 (Workplace Harassment Injunctions)." (*Id.* at ¶ 53).

In alleging his defamation per se claim, Plaintiff asserts:

Defendants knowingly and maliciously published false and defamatory statements about Pro se, falsely accusing him of criminal conduct and workplace misconduct, including, but not limited to: a) Falsely alleging that Pro se stalked and harassed coworkers Antonio Arellano ("Arellano") and Brittany Collins ("Collins"), including claims that Pro se yelled at Collins at work; b) Falsely asserting that Pro se took photographs of Arellano's vehicle at Collins' apartment, recorded Arellano and Collins engaging in sexual activity, and sent such recordings to Arellano's wife, thereby implying an affair between them; c) Wrongfully claiming that Pro se posed a workplace threat due to alleged aggressive behavior, anger issues, and possession of a firearm and taser, deliberately creating a false perception that Pro se made others feel unsafe. These false allegations, initially reported by Lanning and supported by statements from Arellano and Collins, were later escalated to the Office of Associate Relations ("OAR"). They were fabricated with malicious intent to harm Pro se's reputation. The accusations of anger issues, aggressive behavior, stalking, harassment, and voyeurism constitute Defamation Per Se, as they falsely impute criminal behavior—including felony stalking under Arizona law—and directly damage Pro se's professional reputation. Moreover, Lanning falsely alleged that Pro se possessed recordings of coworkers engaging in sexual activity, leading to baseless accusations of voyeurism under A.R.S. § 13-1424. These fabricated claims were intentionally exaggerated to falsely portray Pro se as a criminal.

- 3 -

(*Id.* at ¶ 98). [1] After the alleged defamatory statements were brought to OAR, it conducted an investigation that "ultimately confirmed that no evidence supported these allegations, and that Collins and Arellano falsely accused Pro se in an attempt to have Pro se' [sic] terminated." (*Id.* at ¶ 98). Due to the alleged defamation, Plaintiff claims that he has suffered damages, such as emotional distress and lost wages. (*Id.* at ¶ 101). Defendants have now moved to dismiss Plaintiff's defamation per se claim.

### B.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

---

[1] Plaintiff refers to himself as "Pro se" in the TAC.

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### C.    Discussion

Defendants' challenges to Plaintiff's defamation per se claim largely do not relate to the elements of said claim.[2] Instead, Defendants argue that several qualified privileges apply to the alleged statements, Plaintiff did not adequately plead actual malice, and Plaintiff has not and cannot plead Defendants' ratification of the alleged statements. (Doc. 75 at 3–8).

Initially, the Court addresses Plaintiff's argument that Defendants are precluded from filing this Motion to Dismiss because they did not oppose Plaintiff's Motion for Leave to file a TAC. (Doc. 84 at 4–5). Defendants assert that their non-opposition to the filing of the TAC does not act as a waiver of their right to move to dismiss. (Doc. 86 at 2). And the Court agrees. "Defendants' assertion[] that Plaintiffs fail to state claims for relief is not inconsistent with their failure to oppose the motion to amend, and Defendants do not waive their right to contest the sufficiency of a complaint when they fail to oppose a motion to amend." *Warren v. Fisher*, 2013 WL 1164492, *6 (D.N.J. 2013); *Facciola v. Greenberg Traurig LLP*, 2012 WL 910379, *1 (D. Ariz. 2012) ("The Federal Rules of Civil Procedure…do not require a party to oppose a motion to amend instead of filing a motion to dismiss."). Therefore, the Court will turn to the arguments presented in Defendants' Motion.

### 1.    Qualified Privilege

Defendants first argue that Plaintiff's defamation claim should be dismissed because one or more qualified privileges apply to the alleged defamatory statements, and Plaintiff

---

[2] To establish a defamation per se claim, Plaintiff must show that Defendants published a statement that would impute to him "conduct constituting a criminal offense … if the offense imputed is of a type which, if committed in the place of publication, would be (a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude." *Isles v. Family Dollar, Inc.*, 2025 WL 363705, *8 (Ariz. Ct. App. 2025) (citing Restatement (Second) of Torts, § 571 (1977)) (internal quotation marks omitted).

has not alleged that any privilege has been abused. (Doc. 75 at 3–6). Plaintiff disagrees, arguing that "[e]ven if a conditional privilege initially applied to internal communications, that privilege was forfeited when Lanning knowingly fabricated a criminal accusation of Voyeurism[.]" (Doc. 84 at 5).

The existence of a qualified or conditional privilege is a defense to a defamation action. *Green Acres Tr. v. London*, 688 P.2d 617, 624 (Ariz. 1984). This defense is based on "the social utility of protecting statements required to be made in response to a legal, moral or social duty." *Id.* Under Arizona law, a two-part analysis is used for determining whether a qualified privilege exists. *Id.* "The court must first determine whether a privileged occasion arose, and, if so, whether the occasion for the privilege was abused." *Id.* The existence of a privilege is a question of law for the Court, whereas the latter consideration is a question of fact for a jury. *Id.*

### a.    Existence of Privilege

"To establish that a privileged occasion arose, a defamation defendant must establish that the circumstances in which the communication was made created an obligation to speak." *Id.*

In *Miller v. Servicemaster by Rees*, the plaintiff brought a defamation claim against an employer whose employee believed that the plaintiff was sexually harassing her. 851 P.2d 143, 144 (Ariz. Ct. App. 1992). The defendant employer reported the incident to plaintiff's employer, and plaintiff brought suit against the defendant, claiming "that the written and verbal reports of the incident are defamatory as a matter of law because they adversely damaged his professional reputation." *Id.* at 144–45. The court determined that "a conditional privilege exist[ed] because public policy dictates that employees must be protected from workplace sexual harassment." *Id.* at 145. In so ruling, the court explained "[t]hat interest can only be protected if employees can report perceived acts of sexual harassment regardless whether the acts were intended to harass." *Id.* Therefore, the report of the incident and the defendant's conveyance of it "were for the benefit of protecting [] from unwanted harassment, real or perceived, and [were] conditionally protected." *Id.*

- 6 -

The Court finds that the qualified privilege described in *Miller* applies to the present circumstances. The alleged defamatory statements here were made in the course of an internal investigation to determine the validity of the sexual harassment claims. (See Doc. 65 at ¶ 51). As in *Miller*, employees must be protected from workplace sexual harassment, and thus the reporting of and investigation into claims of such conduct are conditionally privileged. To the extent that the alleged defamatory statements do not pertain to sexual harassment, Arizona courts have more broadly recognized that "a communication is protected by a conditional privilege when the speaker has a duty to make the communication, and it is made in the performance of this duty." *Aspell v. Am. Contract Bridge League of Memphis, Tenn.*, 595 P.2d 191, 192 (Ariz. Ct. App. 1979). "The duty may be a legal, moral or social one." *Id.* All of the statements alleged by Plaintiff were made in furtherance of the OAR investigation, and, as Lanning was Plaintiff's supervisor, it can reasonably be seen that he had an obligation to report instances of stalking, harassment, and aggressive behavior, even if they turned out to be false. (*See* Doc. 65 at ¶ 39). Therefore, a qualified privilege applies to the alleged defamatory statements here.

### b.    Abuse of Privilege

Nonetheless, a fact issue remains as to whether Plaintiff has alleged that Defendants' privilege was abused. An abuse of a qualified privilege occurs by publication with "actual malice" or by excessive publication. *London*, 688 P.2d at 624. "An abuse through 'actual malice' occurs when the defendant makes a statement knowing its falsity or actually entertaining doubts about its truth." *Id.* There is no allegation of excessive publication in the TAC, so the parameters of excessive publication are not relevant here.

At this juncture, the Court reminds both parties that this is a Rule 12(b)(6) Motion, which means that factual considerations are inappropriate and determining whether an element has been alleged in no way means that it has been proven. With those points in mind, here, Plaintiff has alleged that "Defendants knowingly and maliciously published false and defamatory statements about [Plaintiff]" and that "[t]he defamatory statements were exacerbated by Defendants' malicious intent[.]" (Doc. 65 at ¶¶ 98–99). While these

- 7 -

allegations are relatively conclusory, they give Defendants sufficient notice that Plaintiff is claiming that the defamatory statements were made with actual malice.[3]   Whether Plaintiff carries his burden of demonstrating actual malice is a consideration for a later stage of proceedings.

### 2.     Ratification or Authority

Because the alleged defamatory statements were made by Defendants' employees, Defendants next argue that the TAC does not contain allegations that Defendants authorized or ratified the defamatory statements. (Doc. 75 at 7).  Plaintiff generally argues that the facts alleged in the TAC, when taken together, plausibly allege ratification.  (*See* Doc. 84 at 8–9).  The Court again notes that whether an agency relationship exists is generally a question of fact.  *Corral v. Fid. Bankers Life Ins. Co.*, 630 P.2d 1055, 1058 (Ariz. Ct. App. 1981).

Under Arizona law, "a 'principal is subject to direct liability to a third party harmed by an agent's conduct' when 'the agent acts with actual authority or the principal ratifies the agent's conduct" and "the agent's conduct is tortious, or the agent's conduct, if that of the principal, would subject the principal to tort liability[.]' "  *Griego v. Arizona Dental Ass'n*, 2014 WL 5463931 (Ariz. Ct. App. 2014) (citing Restatement (Third) of Agency § 7.03 (2006)).

The Court appreciates Defendants' argument that the TAC fails to identify whether Collins, Arellano, or Lanning was acting as an agent of either Defendant NCS or Defendant Nationwide when any defamatory statements were made.  (Doc. 86 at 4; *see generally* Doc. 65).  To satisfy Fed. R. Civ. P. 8(a)(2), "Plaintiff must specify the claims he is raising against each defendant, what facts form the basis of each claim against each defendant, what each defendant did that makes him or her liable for violating Plaintiff's rights, and how Plaintiff was injured by a particular defendant's conduct." *Myron v. Terhune*, 2012 WL 4483102, *5 (N.D. Cal. 2012); *In re Bello*, 2013 WL 2367796 (Bankr. App. 9th Cir. 2013), aff'd, 622 Fed. App'x. 663 (9th Cir. 2015) (unpublished) ("When a plaintiff asserts

---

[3] Defendants address actual malice in their discussion of Plaintiff's ability to plead fault. (*See* Doc. 75 at 7–8).  The Court's conclusion here applies equally to those arguments.

multiple claims against multiple defendants, this fair notice standard requires that the allegations in the complaint must show which defendants are liable to the plaintiff for which wrongs."). However, the TAC universally suffers from the defect of collectively attributing actions to "Defendants." (*See generally* Doc. 65). As Defendants have not argued the insufficiency of Plaintiff's six other claims on these grounds, the Court will not dismiss Plaintiff's defamation claim for this issue. Nevertheless, Plaintiff should note that, moving forward, he will be required to produce sufficient evidence as to each Defendant's liability and consider whether he will be able to do so. Plaintiff's inability to establish that Collins, Arellano, or Lanning were each acting as an agent of NCS or Nationwide when the alleged defamatory remarks may be grounds for dismissal on summary judgment.

### a. Ratification

In their briefing, the parties primarily discuss whether Plaintiff sufficiently alleged that Defendants ratified the alleged defamatory statements. "In order to hold an employer liable for the consequences of an employee's tort on the ground of ratification, there must be clear evidence of the approval of the wrongful conduct." *Scott v. Allstate Ins. Co.*, 553 P.2d 1221, 12226 (Ariz. Ct. App. 1976). Obviously, on a motion to dismiss, the issue is not whether Plaintiff has produced evidence of approval, rather whether Plaintiff alleged that Defendants approved of the defamatory statements. Plaintiff has not done so here. (*See generally* Doc. 65). Moreover, Plaintiff attached the results of OAR's investigation as an exhibit to his TAC. (Doc. 65-2 at 10–11). The findings of the investigation are clear that the defamatory statements were discredited by the OAR, Defendants' human resources division, and Plaintiff was recommended to return to his role. (*Id.* at 11). As a result, even if Plaintiff had pled ratification, such an allegation would be contradicted by his own exhibits. *See Bronson v. Green Tree Servicing, LLC*, 2009 WL 546159, *8 (E.D. Cal. 2009) ("When an exhibit contradicts facts alleged in the complaint, the facts in the exhibit take precedence.").

### b. Authority

That said, ratification is not the only means of establishing a principal's liability for

its agent's act. A principal can be liable for an agent's tortious acts when that agent is acting with actual or apparent authority. *See Huffman v. JP Morgan Chase Bank, NA*, 2023 WL 2691455, *11-12 (D. Ariz. 2023). "An agent acts with actual authority when. . . the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01; *see also Corral*, 630 P.2d at 1058 ("Agency may be proved by direct evidence of express contract of agency between the principal and agent or by proof of facts implying such contract or the ratification thereof."). By contrast, apparent authority arises when "the principal has intentionally or inadvertently induced third persons to believe that such a person was his agent although no actual or express authority was conferred on him as agent." *Reed v. Gershweir*, 772 P.2d 26, 28 (Ariz. App. 2d Div. 1989).

Here, Plaintiff has alleged that Lanning served as his "direct leader" during his employment with Defendants and that Lanning reported to OAR that Plaintiff possessed recordings of his co-workers engaging in sexual activities. (Doc. 65 at ¶ 7, 51). Based on Plaintiff's allegations, Lanning as well as his co-workers Collins and Arellano were employed by Defendants, and, although it is not explicitly alleged, the existence of such an employment relationship presumably means that they were subject to Defendants' control and bound by some employment contract. *See Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1051 (9th Cir. 2012) (drawing reasonable inferences in favor of the non-moving party on a motion to dismiss). While no express contract is required to demonstrate actual authority, the ability to infer the existence of an express contract between Lanning and Defendants further allows one to infer that Lanning was making the reported statements with actual authority and within the scope of his employment. *See Brown v. Arizona Dept. of Real Est.*, 890 P.2d 615, 621 (Ariz. App. 1st Div. 1995) ("Agency may be proven by an express contract between the parties or by facts implying a contract."); *see also Phoenix Newspapers, Inc. v. Church*, 537 P.2d 1345, 1359 (Ariz. Ct. App. 1975) (concluding that there is nothing in *Times v. Sullivan* or its progeny "which would purport to change in any way well-settled principles of agency law making the employer liable for defamatory

statements made by an employee acting within the scope of his employment."). Therefore, Plaintiff may proceed with his defamation claim under the alleged agency relationship.

Although the long-term viability of Plaintiff's defamation claim remains to be seen, especially given the results of the OAR investigation, Plaintiff has pled a defamation per se claim sufficient to withstand a 12(b)(6) motion.

## II. Motion to Amend

In addition to his Response in Opposition to Defendants' Motion to Dismiss, Plaintiff filed a Motion for Leave to File a Fourth Amended Complaint (Doc. 83). Plaintiff attached a redlined version of his proposed Fourth Amended Complaint. (*See* Doc. 83-1). Defendants responded to the Motion to Amend in their Reply to their Motion to Dismiss, generally arguing that the proposed amendments do not change their above arguments or are otherwise futile. (*See* Doc. 86 at n.1).

The court has discretion to grant or deny leave to amend a complaint, *Swanson v. United States Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996), though leave should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate a decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Consequently, the policy to grant leave to amend is applied with extreme liberality. *Id.* However, there is no abuse of discretion "in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Having reviewed the Motion to Amend and the proposed amendments, the Court denies Plaintiff's Motion for the following reasons. First, the only explanation Plaintiff gives for seeking further amendment is that the amendments "reflect[] newly developed factual allegations and a refined legal theory under Defamation Per Se and Cyberstalking." (Doc. 83 at 1). Plaintiff's Motion was filed on September 5, 2025, a day after the deadline to amend. (*See* Doc. 64). Plaintiff does not undertake any discussion of why any of his

proposed amendments could not have been previously made.

Second, the amendments to Plaintiff's defamation per se claim do not raise new factual allegations. Instead, they are largely responsive to the arguments raised in Defendants' Motions to Dismiss and revise preexisting claims to more expressly state certain elements. (*See*, *e.g.*, Doc. 83-1 at 11 ("Defendants' selective disclosure and manipulation of exculpatory evidence reflect actual malice and institutional ratification of false accusations.")). However, the Court has allowed Plaintiff to proceed with its defamation claim, based on the above ruling, so further amendment of the claim is not necessary.

Third, Plaintiff's remaining amendments are made for the purpose of bringing a cyberstalking claim against Defendants under 18 U.S.C. § 2261A. As Defendants noted, 18 U.S.C. § 2261A is a criminal statute, and no private right of action has been acknowledged under the statute. (*See* Doc. 86 at n.1); *see also Kruska v. Perverted Justice Found. Incorporated.Org*, 2010 WL 4791666, *8 (D. Ariz. 2010) ("Nowhere does 18 U.S.C. § 2261(a)(2) provide a private right of action or recovery. Because there is not a private right of action or recovery under 18 U.S.C. § 2261A(2), Plaintiff's claim under this statute is dismissed with prejudice."). Thus, Plaintiff's cyberstalking amendments are futile. *See*, *e.g.*, *McDonald v. Donofrio*, 2023 WL 4306309, *3 (D. Nev. 2023) ("Because Plaintiff cannot bring a civil claim under a criminal statute, this claim is futile and, therefore, supports denying Plaintiff's Motion to Amend.").

### III.    Motion to Disqualify

Plaintiff seeks to disqualify the undersigned under 28 U.S.C. § 455. (*See* Doc. 109). Plaintiff argues that there is an appearance of bias and unequal treatment in this case that warrants the Court's recusal. (*See generally id.*). Defendants oppose disqualification, contending that Plaintiff has not demonstrated bias or prejudice stemming from an extrajudicial source. (*See* Doc. 113).

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.A.

§ 455(a). "[R]ecusal is appropriate where a reasonable person with knowledge of all the facts would conclude that [the] judge's impartiality might reasonably be questioned." *Kulas v. Flores*, 255 F.3d 780, 787 (9th Cir. 2001) (citing *Moideen v. Gillespie*, 55 F.3d 1478, 1482 (9th Cir.1995)) (internal quotes omitted). However, "[a]dverse rulings alone do not support a finding that the judges were biased." *McNamara v. Cooley*, 72 Fed. Appx. 727, 728 (9th Cir. 2003) (unpublished). "To provide grounds for recusal, prejudice must result from an extrajudicial source." *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984).

Here, Plaintiff identifies various grounds that he believes serve as reasons for the Court's disqualification. First, Plaintiff points to a "pattern of rulings demonstrating bias." (Doc. 109 at 3). Specifically, he claims that the Court ruled favorably on four of Defendants' discovery disputes and unfavorably on three discovery disputes brought by Plaintiff. (*Id.* at 4–5). He argues that the Court inconsistently applied the term "fishing expedition" to discovery requests brought by Plaintiff and Defendants. (*Id.* at 5–7). Next, Plaintiff asserts that the Court refused to entertain his spoliation concerns. (*Id.* at 7–8). Plaintiff further takes issue with what he believes is the Court's unequal treatment of Plaintiff and Defendants, again primarily based on the Court's rulings. (*See id.* at 8–14).

Recusal is solely warranted when alleged bias or partiality stemmed from an extrajudicial source. *See U.S. v. Raymond*, 10 Fed. App'x. 513, 514 (9th Cir. 2001) (unpublished). The only suggestion of bias Plaintiff provides is the Court's prior rulings.[4] *Morissette v. Yu*, 21 F.3d 1114, *1 (9th Cir. 1994) ("The prior decisions do not demonstrate bias from an extrajudicial source, so they cannot support recusal."); *Federal National Mortgage Association v. Willis*, 2018 WL 3544073, *3 (D. Nev. 2018) ("[Plaintiff's] motion sets forth his disagreements with the court's findings based on his

---

[4] Plaintiff also believes that the undersigned's courtroom management demonstrates bias, but a review of the record demonstrates that both parties have received full and fair opportunities to litigate their disputes in this case. Indeed, the Court has expended considerable time and energy on this case. Furthermore, "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune [from recusal]." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994). Additionally, Defendants effectively rebut Plaintiff's claims of biased courtroom behavior and clarify what transpired during the parties' hearings before the Court. (*See* Doc. 113 at 3–5).

misunderstanding of the law and the misconstrued and unsubstantiated notion that the court's findings are the result of the judge's biases."). The Court will not re-explain the rationale for all the rulings that have been issued on the parties' many discovery disputes but will state that they were the result of the Court's interpretation of the applicable law and facts. Plaintiff may not agree with the Court's rulings, but this is not a scenario that is unique to Plaintiff. The Court is perpetually in a role to render decisions that create unfavorable results for one or even both parties. "To the extent plaintiff disagrees with the undersigned's determinations, such issues are properly raised through an appeal to the Ninth Circuit, not a motion to recuse." *Chiat v. Washington*, 2020 WL 8617399, *2 (W.D. Wash. 2020). In all, Plaintiff has not demonstrated the existence of legitimate deep-seated favoritism or antagonism that would render fair judgment impossible as necessary to support a § 455 recusal. *Liteky*, 510 U.S. at 555.

**IV.    Motion for Subpoena**

On November 21, 2025, Plaintiff filed a Motion to Subpoena Witnesses for Depositions (Doc. 119). The parties then filed a Joint Discovery Dispute (Doc. 122) with the Court, regarding the parties' disagreements on the order of depositions, the timing of depositions, and which depositions are needed. The Court stayed all discovery in this case on December 3, 2025 (Doc. 124), so both these issues have remained unresolved.

The Court denies Plaintiff's Motion to Subpoena without prejudice because, in ruling on the pending motions in this case, the stay will be lifted and the forthcoming resolution of the Joint Discovery Dispute will likely impact the subpoenas Plaintiff requires. Plaintiff may later refile his Motion if needed, but it is first necessary to resolve the parties' Dispute. On a final note, the Court emphasizes that meet and confer requirements are taken seriously, and the parties must engage in good faith efforts to resolve their issues before bringing further disputes to the Court.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Claim VII (Defamation Per Se) (Doc. 75) is **DENIED**. Plaintiff may proceed with his defamation per se claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Fourth Amended Complaint (Doc. 83) is **DENIED**. The Third Amended Complaint is the operative Complaint in these proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Disqualify Judge pursuant to 28 USC § 455(a) and for Reassignment (Doc. 109) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Subpoena Witnesses for Depositions (Doc. 119) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that the stay of discovery and other relevant deadlines in this matter 9Doc. 124) is **LIFTED**.

**IT IS FINALLY ORDERED** that all further pretrial matters in this case, including the Joint Discovery Dispute (Doc. 122), will be referred to a Magistrate Judge by separate Order.

Dated this 24th day of March, 2026.

Honorable Diane J. Humetewa
United States District Judge

- 15 -